Robert W. Dickerson, Jr. (SBN 89367)
E-mail: rdickerson@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Tel: 213.236.0600
Fax: 213.236.2700

Attorneys for Plaintiff
RUMBLE, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUMBLE, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE DAILY MAIL AND GENERAL TRUST PLC dba THE DAILY MAIL, DMG MEDIA LTD dba DAILYMAIL.COM, ASSOCIATED NEWSPAPERS, LTD., MAILONLINE, DIMPLE MISTRY, and DOES 1-10, inclusive, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR:** <br><br> **(1) WILLFUL COPYRIGHT INFRINGEMENT** <br><br> **(2) BREACH OF CONTRACT** <br><br> **(3) TRADE LIBEL** <br><br> **DEMAND FOR JURY TRIAL** |

For its complaint against Defendants, plaintiff Rumble, Inc. ("Rumble") alleges as follows:

## INTRODUCTION

1. This dispute arises from the willful infringement by the Defendants of a copyrighted video as to which plaintiff Rumble, Inc. is the exclusive licensee (with the right to bring actions for infringement), from libelous statements being made to third parties about Rumble, and from a breach of an agreement.

2. Rumble is one of the most successful and respected companies in the business of obtaining the licensing and enforcement rights from the owners/authors of online-video content (such as the lovable animal videos that helped to launch and popularize YouTube; e.g., "The Cutest Cats Around" and other attention-grabbing videos), and in turn licensing those videos to other companies who have websites or other social media sites, and who want to make those videos available to visitors to their sites in order to generate advertising revenue.

3. The original author (the "content-creator") of the video should be compensated for the publication of his or her video. More often than not in the past, however, he or she was not. This is where Rumble comes into the picture.

4. Rumble provides an important service to the untold number of "little guy/gal" videographers who create the video content that is uploaded to the internet, enjoyed by millions, and monetized by a few. By themselves, these individual content- creators cannot effectively police and enforce their copyrights against those infringers who use their videos without approval, authorization or paying anything. These serial infringers can and do make very large sums of money using these copyright-protected videos without ever paying one penny to the content-creator. These serial infringers can most often willfully infringe with impunity, relying on the practical inability of the vast majority of the content-creators to enforce their copyrights.

5. Rumble provides a platform for those individual content-creators to monetize their copyrighted videos. By simply appointing Rumble as their exclusive licensee as to their copyrighted video(s), and then uploading their video(s) to Rumble's platform, Rumble takes over and does all the rest. Rumble makes its portfolio of exclusively-licensed videos available to others to use for a fee (and a portion of the downstream revenue collected by the user), monitors that use, collects the fee (and revenue), and shares it with the content-creator. There are some individual content-creators who are receiving royalties in the 6-figures

annually, and many that are receiving annual 5-figure royalties.

6. Currently, Rumble has over 700,000 videos in its portfolio, and more are being added at the rate of about 600 each day. Rumble has licensed, and is currently licensing, its videos to some of the largest and most well-known companies and websites in the world. None of the Defendants are currently licensed by Rumble.

7. At one time, however, Rumble had also licensed its videos to Defendants (other than Defendant Mistry). Even though that license terminated such that Defendants had no further rights to use any of Rumble's copyrighted videos, Defendants continued to do so through at least the MailOnline website, and also on Defendants' Facebook and Instagram accounts. This led to the filing by Rumble of a complaint for willful Copyright Infringement (Lawsuit No. 1). A copy of the First Amended Complaint (sans Exhibits) in that earlier action is attached hereto as Exhibit 1.

8. In Lawsuit No. 1, Defendants filed a Motion to Dismiss or Transfer Venue, which was denied by the Court (Lawsuit No. 1, Dkt. 22). A copy of the Court's Order is attached hereto as Exhibit 2. In that Order, the Court noted that Defendants had an office in Los Angeles which Defendants had failed to mention in their motion or supporting declaration, leading the Court to then comment: "Defendants have employees and an established business presence in Los Angeles; the Court does not look kindly on the fact that Defendants conveniently omitted any mention of their Los Angeles operation from their motion." (*Id*. page 4 of 8).

9. Defendants continue have employees and an established business presence in Los Angeles. (*See*, Exhibit 3 attached, which is a screenshot from Defendants' website taken on September 4, 2019).

10. Lawsuit No. 1 was amicably resolved, and a dismissal was filed on December 28, 2018 (*See* Dkt. 47 in Lawsuit No. 1).

///

11. Since well prior to the filing of Lawsuit No. 1, and continuing through today, Rumble has not granted any right or license to any defendant to use, publish or disseminate any Rumble Video.

12. Just recently, it has come to Rumble's attention that Defendants have once again engaged in willful copyright infringement with respect to a video that was exclusively licensed to Rumble (the "Infringed Video"), thus leading to the filing of this second lawsuit (Lawsuit No. 2). As will be discussed in more detail below, and as the "smoking gun" contemporaneous documents show, there is no question but that the infringement was willful, and that the communication between Defendants' Senior Editor (defendant Mistry) and the Content Creator was also intended to falsely disparage Rumble, and to interfere with its contract and business advantage.

13. It is clear that Defendants have not learned their lesson about respecting the copyrights of others in general, and those on the Rumble platform, in particular. Given the history of litigation between the parties, the history of Defendants' recurring disregard for and willful infringement of copyrights, and given the egregiousness of the conduct leading to the filing of this Lawsuit No. 2, Rumble will seek the maximum damages to which it is entitled, and will also seek punitive damages in an amount not less than $20,000,000.

14. To put this number in context, according to defendant Daily Mail and General Trust PLC's Annual Report for 2018, its Revenue for 2018 was £1,426,000,000 (British Pounds) which equates to $1,748,970,462 (U.S. Dollars) at the current exchange rate. Revenue for just its Consumer Media Group was £654,000,000 (British Pounds) which equates to $802,122,498 (U.S. Dollars) at the current exchange rate. For a person or small company who engaged in the same conduct as Defendants, and who had annual revenue of $100,000, amercing that person or company $5,000 (or 5% of revenue) in punitive damages would be quite reasonable, in fact, conservative. Applying that same % to Defendants equates to

$87,448,523 of total revenue and $40,106,124 of revenue for just Defendants' Consumer Media Group. Put into context, it is seen that the $20,000,000 amount is reasonable, in fact conservative, and is more than justified by the willful and egregious conduct by defendants.

## THE PARTIES

15. Plaintiff Rumble is a Canadian corporation, with its principal place of business at 218 Adelaide Street West, Suite 400,Toronto, Ontario, M5H1W7.

16. Defendant Daily Mail and General Trust PLC ("DMGT") is believed to be a United Kingdom public limited company having its principal place of business at Northcliffe House, 2 Derry Street, Kensington, London Borough of Kensington and Chelsea, London, United Kingdom. Rumble is informed and believes that DMGT is a multi-faceted company that owns, has invested in, and/or manages a multi-national portfolio of businesses, including directly or through other entities, the other named Defendants. It is believed that DMGT itself, and certainly through its vast holdings and control, does business on a daily business in California and within this judicial district. Therefore, this court has personal jurisdiction over DMGT.

17. Defendant The Daily Mail (TDM) is a company owned and controlled by DMGT. Rumble does not currently have sufficient information or belief as to whether TDM is a separate legal entity in its own right, or a "dba," division, or subsidiary of DMGT. It is believed that TDM's principal place of business is publicly listed to be the same, and is the same, as that for DMGT. It is believed that TDM publishes or is in control of publishing, distributing and selling tabloid-type newspapers in both hard copy and online throughout the world, including in California and this judicial district. It is believed that TDM itself and through its affiliates and agents do business on a daily business in California and within this judicial district. Therefore, this Court has personal jurisdiction over DMGT.

///

18. Defendant DMG Media (DMGMedia) is believed now to be a division or wholly-owned subsidiary of defendant DMGT, and to have the same principal place of business as DMGT. It is believed that DMGMedia is a multi-channel consumer media company that owns and controls both paper and electronic media, including websites such as DAILYMAIL.COM, which is available online at www.dailymail.co.ik/UShome/index.html ("DMWebsite").

19. Defendant Associated Newspapers Limited ("ANL") is believed now to be a division or wholly-owned subsidiary of defendant DMGT, and to have the same principal place of business as DMGT.

20. Defendant DMGMedia (or one of the other corporate defendants) is also believed to own and control a smartphone "app" called "MailOnline." Rumble does not yet know if MailOnline is a separate entity, a dba, or a division of DMGMedia. The MailOnline App is available in California and this judicial district from Apple iTunes. *See* https://itunes.apple.com/us/app/mailonline/id384101264?mt=8. It is believed that DMGMedia does business on a daily basis in California and within this judicial district, and has long had an office and employees in this judicial district. Therefore, this Court has personal jurisdiction over DMGMedia, and if MailOnline is a separate legal entity, over MailOnline as well.

21. Defendant Ms. Dimple Mistry is, on information and belief, an individual currently residing in London, and is believed not to be a U.S. resident or citizen. She is also believed to be employed by at least one Defendant (believed to be MailOnline.com) as the UK Senior Video Syndication Editor. It is further believed that at all relevant times she was a managing agent and acting within the course and scope of her employment with one or more Defendants with respect to her conduct as herein alleged. A true and correct copy of her current LinkedIn page is attached as Exhibit 4.

///

22. Rumble is informed and believed that there may have been some recent corporate realignment between and/or among the defendants named above, such that Rumble is ignorant of the current inter-relationships and inter-workings of and among defendants, and whether there are any other legal entities in the chain of title, command and control with respect to the wrongful actions hereinafter alleged, and therefore reserves the right to add or delete entities as defendants herein as that information is provided, either voluntarily or through discovery. In that regard, Rumble invites the currently-named Defendants to advise Rumble if the Defendants now named are over- or under-inclusive, and if so, why and who should be added or deleted so as to expedite the process of having the appropriate entities named as defendants. In addition to other individuals and entities within the DMGT portfolio of companies who should be named defendants, there may be other individuals and entities outside the DMGT corporate web who have some involvement and liability for the wrongful acts herein alleged, including perhaps conspiring with other Defendants. Therefore, as their true names or capacities are at this time unknown to Rumble, they are sued herein under the fictitious names Does 1 through 10, inclusive. Rumble reserve the right to amend this Complaint as appropriate, including the right to assert other claims for relief, for example, for Conspiracy, should discovery in this matter disclose that a conspiracy to infringe existed by and among one or more defendants, and/or with any third party.

**JURISDICTION AND VENUE**

23. This action arises in part under the copyright laws of the United States, 17 U.S.C. §§ 501, et seq., This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1400(a). This Court has jurisdiction of the related asserted claims under 28 U.S.C. §§ 1338(b) and 1367. There is also complete diversity between the Plaintiff on the one hand, and all Defendants on the other, and the amount in controversy is sufficient large to confer diversity jurisdiction within this Court as well.

24. Venue is proper in this district under 28 U.S.C. §§ 1391(b)–(d) and 1400(b). Defendants have committed unlawful acts in this judicial district. Defendants (other than Defendant Mistry) and each of them have done business in this venue or may be found in this judicial district. Venue is also proper in the Central District of California pursuant to 28 U.S.C. §1391(c) in that each of the Defendants have substantial business contacts with the Central District of California, in part because Defendants (or their agents) have again infringed a copyrighted video of Rumble in the Los Angeles area, and throughout the United States and abroad.

**FACTS COMMON TO ALL CLAIMS**

25. Rumble operates a video platform that sources, validates, provides clearance management, distribution and monetization for video content. It is a content-creator-centric platform, whose main goal and core business model has always been to help video creators increase distribution and monetize their videos. Rumble allows video creators to host, share, monetize and distribute their video content from one centralized account.

26. Rumble has proprietary software that is believed to be among the most sophisticated in the industry to identify and validate the actual content-creator for the videos in its portfolio. This allows Rumble to verify, to a high degree of confidence, that the content-creators are in fact the copyright holder as to the videos uploaded onto its platform.

27. Rumble has working relationships with some of the most respected video creators and licenses video content through its revenue-share video player and, if licenses permit, through other video players to many very well-known websites, including those that are household names.

28. Rumble's website, Rumble.com, is where video creators can host, share, create channels, monetize, and distribute their content across the Internet and television from a single centralized video platform. For publishers, newsrooms and

ATTORNEYS AT LAW
LOS ANGELES

LA #4815-1030-5704 v2 - 8 - COMPLAINT; DEMAND FOR JURY TRIAL

brands, Rumble helps to identify, source, validate and acquire licenses to the most important and popular social videos on the web.

29. Currently, Rumble has more than 100,000 amateur and professional video content-creators that currently contribute to more than 100 million streams per month. Some of the top video content-creators use Rumble's platform. Rumble's creator-centric platform has enabled more of these amateur and professional video content-creators, media companies, and celebrities to distribute and monetize their social videos more than ever before.

30. Content-creators upload their videos to Rumble.com, and Rumble makes these videos available to websites for monetization. Videos can also be distributed to over 400 partner sites including high-traffic, household-name outlets.

31. Rumble has experienced remarkable growth since 2014, and has entered into the Top 100 websites as ranked by Amazon's Alexa.com and Quantcast in prior years.

32. Based on data from Google Analytics in August 2019, in the United States alone Rumble's platform generated over 25 million users, and globally, Rumble reached over 100 million users across various platforms. In short, Rumble is a one of the most respected and successful video content monetization platforms in the world.

33. Defendants have many different businesses. One of them is to publish videos on one or more of its online sites.

34. According to some published reports, willfully infringing video copyrights is part of Defendants' playbook, or standard operating procedure. *See, e.g.*, the articles published at https://digiday.com/media/video-content-mail-online-break-com/ and http://www.hollywoodreporter.com/thr-esq/gawker-agrees-alter-story-dailymailcom-settlement-mail-online-951352, The first article, published November 11, 2013, is entitled "Need More Video Content? Try Stealing Some", and goes on to state:

> "When you watch a video on the Mail Online's website, served in the Mail Online's video player, after pre-roll ads sold by the Mail Online's sales team, you'd be forgiven for thinking the company had the right to monetize that content. You might be wrong.
>
> "Video owners say the publisher is taking their content without permission, dropping it in its proprietary player, and then selling ads against it to major advertisers such as Doritos."

The latter article includes the following statement:

> "King, a former freelancer for Mail Online, penned a piece about lifting other publications' stories wholesale, writing that 'the Mail's editorial model depends on little more than dishonesty, theft of copyrighted material, and sensationalism so absurd that it crosses into fabrication.'"

(Emphasis added).

The manner in which Defendants have willfully infringed Rumble's copyrighted video lends credence to these reports. Certainly, given the conduct by Defendants as discussed herein, Rumble has formed the opinion that willfully infringing videos has long been part of Defendants' playbook, and remains so.

35. Rumble has registered the copyright in a video that depicts a seagull eating a shark ("the Infringed Video"). A copy of the issued Copyright Registration for his video is attached as Exhibit 5. Defendants had and have no rights to this video or its now-registered copyright, and no right to publish it without Rumble's consent, and without paying royalties to Rumble, a portion of which would be passed onto the Content Creator for the Infringed Video. Rumble is the exclusive

licensee from the Content Creator for the Infringed Video.

36. Screenshots showing Defendant infringing publication of the Infringed Video are attached as Exhibit 6.

37. Attached as Exhibit 7 is a screenshot showing a portion of the communication between the Content Creator and Defendants' UK Senior Video Syndication Editor (Ms. Dimple Mistry).

38. According to defendant Mistry's LinkedIn page (attached as Exhibit 4, she has been employed with defendants' MailOnline company since November 2017.

39. On her LinkedIn page, defendant Mistry lists her "Experience" in her position with MailOnline as:

> "Leading a team of video syndication editors for MailOnline;" "Managing a team of video syndication editors on a day-to-day basis, ensuring quality of work;"

> "Identifying and curating videos that will go virals (sic);"

> "Liaising with video and social media teams to understand and and identify content that will perform for MailOnline and its social channels;"

> "Growing video views and maintaining MailOnline's status as one of the world's biggest social-video publishers."

40. It is believed that at all relevant times defendant Mistry was a managing agent and acting within the course and scope of her employment with one or more Defendants with respect to her conduct as herein alleged.

41. As shown in the screenshot attached as Exhibit 7, defendant Mistry, acting in her capacity as Defendants' UK Senior Video Syndication Editor, communicated with the Content Creator ("Rebecca") for the Infringed Video, with respect to Defendants' obtaining a license or approval from Rebecca for Defendants to publish the Infringed Video.  In the communication portion not shown in Exhibit 7, defendant Mistry asked Rebecca if Defendants could publish the Infringed Video, and Rebecca informed defendant Mistry that she (Rebecca) could not do so because Rumble had the rights to the Infringed Video.  In response, in the portion of the communication shown in Exhibit 7, defendant Mistry replied:

> "Hi Rebecca
>
> "Thanks for replying to my comment.
>
> "Unfortunately, we don't work with Rumble.  It's the only agency with don't work with.  Would you consider allowing us to pay you directly for the use?"

42. Rebecca did not give defendant Mistry (or any Defendant) the right, approval or license to use and publish the Infringed Video.  In fact, Rebecca told defendant Mistry (and thus the other Defendants) that they could not publish because Rumble had the rights.

43. But defendant Mistry and the other Defendants did so anyway. (*See* Exhibit 6).

44. The Mistry reply is telling, and damning, is several ways:  first, it shows that defendant Mistry (and thus Defendants) were aware of the fact that it could not use or publish the Infringed Video without first getting approval and paying for that use; second, defendant Mistry (and thus Defendants) were informed of the fact that Rebecca had exclusively licensed the rights to the Infringed Video to Rumble; third, defendant Mistry (and thus Defendants) were informed there was contract or other advantageous business relationship between Rebecca and Rumble;

fourth, notwithstanding being so aware, defendant Mistry (and thus Defendants) attempted willfully and intentionally to interfere with the contract and relationship by offering to pay Rebecca directly (circumventing Rumble); fifth, in attempting to circumvent Rumble, defendant Mistry (and thus Defendants) knew that in so doing, that would also lessen the value of the Infringed Video to Rumble in terms of licensing fees and advertising revenue it could obtain from others; sixth, it would also deprive Rebecca of a share of such advertising revenue; seventh; it shows that defendant Mistry (and thus Defendants) were well aware of Rumble; eighth, it shows that defendant Mistry (and thus Defendants) were well aware that Defendants did not have any agreement or license with Rumble that would allow Defendants to use or publish any Rumble Video, including the Infringed Video; and ninth, in saying that Rumble "was the only agency" with which Defendants "do not work," defendant Mistry (and thus Defendants) were casting Rumble in a false and disparaging light, with the clear inference being intentionally communicated that there was something wrong or unsavory at Rumble, such that it was the "only agency" with which Defendants "would not work."

45. Because the above-referenced communication between defendant Mistry and Rebecca was on Facebook, all of the people who were Facebook "friends" with either defendant Mistry or Rebecca would have had access to that communication. In fact, Plaintiff is informed at least some of Rebecca's "friends" commented to Rebecca that they had seen it. If defendant Mistry was using one of the other Defendants' Facebook account for the communication, the number of persons who may have seen the exchange would be very large. Thus, it was published to more than just Rebecca.

46. Rumble is informed and believes that Defendant Mistry's communication to Rebecca that libeled Rumble was not a one-off, isolated instance of a Defendant (or its agents, managers and employees) engaging in this type of conduct that is intentionally disparaging, derogatory and demeaning toward Rumble

that was intended to, and did, cause harm to Rumble.

## FIRST CLAIM FOR RELIEF

### Infringement of Copyright under 17 U.S.C. §§ 501 *et seq*.

47. Rumble incorporates the allegations of the foregoing paragraphs as though fully set forth here.

48. Rumble has duly and lawfully registered the Copyright in the Infringed Video with the U.S. Copyright Office.  As mentioned above, a true and correct copy of the Registration is attached as Exhibit 5.

49. One or more of Defendants have infringed, and/or has contributed to the infringement, of the Infringed Video, which infringement of the Infringed Videos was willful and is imputed to the other Defendants.

50.  For their own profit and advantage, Defendants are misappropriating the non-transformed, copyrighted Infringed Video, and thus are attempting to harm Rumble and the Content Creator.

51. Rumble has invested heavily, both in hard dollar and sweat equity investments, to create the content-centric platform that allows the content-creators to easily and effectively monetize their copyrighted works.  Defendants have, without authorization from Rumble or the Content Creator used and published the Infringed Video which constitutes copyright infringement.  Actually, defendant Mistry was affirmatively told by Rebecca that Defendants could not use or publish the Infringed Video because Rumble had the rights.

52. Under the circumstances described above, that infringement was clearly willful and intentional, and in knowing and callous disregard and disrespect for the copyright, and for Rumble and its rights.

53. Rumble has complied in all respects with 17 U.S.C. §§ 101 et seq., and secured, the exclusive rights and privileges to sue and collect damages for infringement of the copyrights of the above-referenced videos.  Rumble has been and still is the sole entity with right to bring suit for infringement of the copyrights

in the Infringed Videos.

54. Rumble has obtained a Rumble Content Agreement (which includes an exclusive license) from the Content Creator for the Infringed Video. That Agreement states (in part): "You are granting Rumble an exclusive, worldwide, commercial, sub-licensable and transferable license to use, reproduce, distribute, edit, syndicate, prepare derivative works of, display, and perform the Content in connection with the Services … in any media formats and through any media channels. … You hereby irrevocably appoint Rumble Inc. as your attorney-in-fact to take any such action as may from time to time be necessary to effect, transfer, or assign the rights granted to Rumble herein, including without limitation copyright-related actions, and you hereby assign to Rumble to right to prosecute any and all claims from the past, present, and future used of the Videos by unauthorized third parties." The Agreement also confirms that the Content Creator "[has] not signed an exclusive agreement with any other parties," confirming that Rumble is the sole and exclusive licensee as to the Infringed Videos. Thus, Rumble has standing to bring this action for infringement of the Infringed Videos. See, Minden Pictures, Inc. v. John Wiley & Sons, Inc., 795 F.3d 997, 1005-06 (9th Cir. 2015)("Because we conclude that the Agency Agreements convey the rights to reproduce, distribute, and display the photographs to Minden via an 'exclusive license' to grant licenses to third parties, we hold that Minden may bring an infringement action to remedy the unauthorized reproduction, distribution, and display of the photographs by those to whom it has granted licenses.").

55. Defendants' conduct violates the exclusive rights belonging to Rumble, and to the Content Creators, who has exclusively licensed those rights to Rumble, who in turn, is now owner of the right to sue for and collect damages for infringement of the copyrights in the Infringed Videos, including without limitation Rumble's and content-creator's rights under 17 U.S.C. § 106.

56. On information and belief, Rumble alleges that, as a direct and

proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Rumble and the content-creators. Accordingly, Rumble seeks an award of the maximum amount of damages allowable under 17 U.S.C. §§ 504 and 505.

57. Defendants' infringing conduct has also caused and is causing substantial and irreparable injury and damage to Rumble (and its licensor Content Creator) in an amount not capable of determination, and, unless restrained, will cause further irreparable injury, leaving Rumble with no adequate remedy at law. Defendants have willfully engaged in the acts complained of with oppression, fraud, and malice, and in conscious disregard of the rights of Rumble and the licensor Content Creator. Rumble is, therefore, entitled to at least to the maximum statutory damages allowable for willful infringement.

58. Based on the foregoing, and pursuant to 17 U.S.C. § 504, Rumble is entitled to have Defendants disgorge all profits earned (directly or indirectly) as a result of Defendants' copyright infringement.

59. In addition, pursuant to 17 U.S.C. § 503, Rumble respectfully requests this Honorable Court: a) to order the impounding of all copies of Infringing Video; b) to order the Defendants to cease and desist from further distributing of any video from Rumble's portfolio; and c) preliminarily to order that all revenue received in the past or in the future by Defendants on account of their infringement be paid into an interest-bearing escrow account.

60. In addition, pursuant to 17 U.S.C. § 505, Rumble respectfully requests this Honorable Court to order the Defendants to pay all costs incurred by Rumble in the prosecution of this civil action, including, but not limited to, expert witness fees, costs, and attorney's fees.

///
///
///

## SECOND CLAIM FOR RELIEF

### Breach of Contract

61. Rumble incorporates by reference each and every allegation contained in the foregoing paragraph, as though fully set forth here.

62. The actions of Defendants as described above constitute breach of an agreement ("the Agreement"). Because of the confidentiality provisions in the Agreement, a copy of it is not attached at this time, and its content is not described herein. Rumble is informed and believes that one or more of the Defendants are well aware of the Agreement, and of the provisions that have been breached. Rumble will provide such details to Defendants upon request, including filing an Amended Complaint that attaches a copy of the Agreement and sets forth such details if Defendants consent to such filing.

63. The breach has proximately cause damage to Rumble, such that Rumble is entitled to compensatory damages, costs and attorneys' fees. Also, given the willful and egregious nature of the breaching conduct and other wrongful conduct that is directly related to the breach, Rumble seeks punitive fees in an amount not less than $20,000,000.

## THIRD CLAIM FOR RELIEF

### Trade Libel

64. Rumble incorporates by reference each and every allegation contained in the foregoing paragraph, as though fully set forth here.

65. Defendant Mistry (and thus the other Defendants) harmed Rumble by making and publishing to third parties a statement that disparaged Rumble and its video platform services. As set forth above, defendant Mistry made a statement that would be clearly or necessarily understood to have disparaged the quality or integrity of Rumble's video platform services. That statement was made to a person other than Rumble. The statement was untrue. Defendant Mistry (and thus the other Defendants) knew that the statement was untrue or at a minimum acted

1  with reckless disregard of the truth or falsity of the statement.  Defendant Mistry
2  (and thus the other Defendants) should have recognized that someone else might act
3  in reliance on the statement, causing Rumble financial loss.

4        66.    Rumble is informed and believes that the conduct of Defendant Mistry
5  (and thus the other Defendants) as alleged above is not an isolated instance of such
6  disparaging comments, but that discovery will show that there have been other such
7  instances.  Rumble is informed and believes that discovery will show the nature
8  and extent of such disparaging comments, which has caused direct financial harm to
9  Rumble because other Content Creators were causes not to use Rumble's services,
10 for which Defendants' conduct was a substantial factor in causing this harm to
11 Rumble

12       67.    The trade libel has proximately cause damage to Rumble, such that
13 Rumble is entitled to compensatory damages, costs and attorneys' fees.   Also,
14 given the willful and egregious nature of the conduct, Rumble seeks punitive fees in
15 an amount not less than $20,000,000.

## **PRAYER FOR RELIEF**

17     WHEREFORE, Rumble prays for judgment against Defendants, jointly and
18 severally, as follows:

19     1.    For compensatory damages according to proof, including actual and/or
20 statutory damages, and collateral damage for copyright infringement, including all
21 of the revenue and profits obtained by Defendants as a result of that infringement.

22     2.    That such infringement was willful;

23     3.    That Rumble be awarded its attorneys' fees and costs under 17 U.S.C.
24 §505 and the inherent power of the Court;

25     4.    That Defendant ANL and other Defendants breached the Agreement;

26     5.    That such breach proximately caused damages to Rumble in an
27 amount to be determined at trial;

28     6.    That the breach was intentional and egregious, justifying the award of

1 punitive damages.

2     7.    That Defendants have engaged in trade libel against Rumble.

3     8.    That Defendants libelous conduct was intentional and egregious and has caused and is continuing to cause damage to Rumble, justifying an award of punitive damages.

    9.    That Defendants be ordered to pay damages for their libelous conduct.

    10.    That Defendants and each of them, and their subsidiaries, dba's, divisions, affiliates, parents, successors, assigns, officers, agents, representatives, servants, and employees, and all persons in active concert or participation with them or any of them, be preliminarily and permanently enjoined from unlawfully using copyrighted video's as to which Rumble is the exclusive licensee; from engaging in trade libel against Rumble, and from further breach of the Agreement.

    11.    That Rumble be awarded punitive damages in an amount not less than $20,000,000.00

    12.    That Rumble have such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: September 30, 2019    BURKE, WILLIAMS & SORENSEN, LLP

By: */s/ Robert W. Dickerson Jr.*
    Robert W. Dickerson, Jr.

Attorneys for Plaintiff
RUMBLE, INC.

## DEMAND FOR JURY

Plaintiff hereby requests a trial by jury for all issues properly submitted to a jury.

Respectfully submitted,

Dated: September 30, 2019

BURKE, WILLIAMS & SORENSEN, LLP

By: */s/ Robert W. Dickerson Jr.*
　　　Robert W. Dickerson, Jr.

Attorneys for Plaintiff
RUMBLE, INC.